IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. _____

ERIC CONTESSA, as Personal Representative
of the Estate of Vincenzo Luciano Contessa,

    Plaintiff,

v.

WHITE PINE INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT, WHITE PINE INSURANCE COMPANY'S NOTICE OF REMOVAL

Defendant, White Pine Insurance Company ("WPIC"), pursuant to 28 U.S.C. §§ 1332(a), 1441 and 1446, removes this civil action from the Circuit of the Fourth Judicial Circuit in and for Duval County, Florida ("State Court") to the United States District Court for the Middle District of Florida ("Federal Court").  As grounds for removal, WPIC states as follows:

### I.    INTRODUCTION

WPIC has properly removed this action from State Court to Federal Court pursuant Sections 1332, 1441, and 1446, because: (1) removal is timely; (2) the amount in controversy exceeds the jurisdictional minimum of $75,000, exclusive of interests and costs, (3) there is complete diversity of citizenship

between Plaintiff, Eric Contessa, the Personal Representative of the Estate of Vincenzo Luciano Contessa ("Decedent") and WPIC; and (4) all removal conditions are satisfied.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

The operative complaint in the instant action, the Amended Complaint, alleges that WPIC issued a Commercial General Liability policy with limits of liability of $1,000,000 per "occurrence" to QYZ, owner of Dragon Room Restaurant in Orange Park, Florida. *Ex. 1, Amended Complaint* at ¶5-6 & Ex. A ("Policy").[2]

On July 26, 2018, an auto operated by Victor Palma collided with Decedent's motorcycle, resulting in Decedent's death. *Id.* at ¶8. In 2019, Plaintiff filed a wrongful death lawsuit against Palma in state court in Duval County. *Id.* at ¶10. ("Underlying Lawsuit"). On June 28, 2019, Plaintiff filed an amended complaint in the Underlying Lawsuit that joined QYZ as a defendant, alleging that QYZ was vicariously liable for Palma's negligent operation of the automobile. *Id.* at ¶11 & Ex. B. On July 28, 2020, Plaintiff filed a second amended complaint, dropping Palma as a defendant and

---

[1] WPIC summarizes the Amended Complaint solely for purposes of WPIC's Notice of Removal. WPIC neither concedes nor admits the Amended Complaint's allegations or causes of action are accurate or have any merit.
[2] Plaintiff never formally served the original Complaint on WPIC in the State Court case prior to removal. *Ex. 2, State Court Docket.*

2

proceeding with the wrongful death/vicarious liability claims against QYZ. *Id.* at ¶12 & Ex. C.

On August 20, 2019 and June 2, 2021, WPIC declined to defend and indemnify QYZ in the Underlying Lawsuit based on the Policy's "Aircraft, Auto Or Watercraft" exclusion and the "Limitation of Coverage to Designated Premises, Project Or Operation" endorsement. *Id.* at ¶14-17 & Ex. D-E.

In January 2022, QYZ and Plaintiff entered into a settlement and assignment agreement. Under the terms of their agreements, they consented to arbitrate Plaintiff's claim against QYZ in lieu of a jury trial, agreed that Plaintiff would not execute the judgment against QYZ generated by the arbitration, and QYZ would assign all rights under the Policy to Plaintiff to collect the judgment from WPIC. *Id.* at ¶18-21 & Ex. F-G. On February 22, 2023, the arbitrator entered an award for Plaintiff, and the trial court entered a judgment based on the award against QYZ for $12,499,389.10 in damages, plus interest. *Id.* at ¶22, 24 & Ex. H-I.

In Count 1 of the Amended Complaint, "Breach of Contract: WPIC's Duty to Defend", Plaintiff alleges that the pleadings in the Underlying Lawsuit required WPIC to defend QYZ under the Policy, and WPIC's refusal breached WPIC's contractual obligations to QYZ, and as a result, Plaintiff was damaged. *Id.* at ¶27-40.

In Count 2, "Breach of Contract: WPIC's Duty to Indemnify", Plaintiff alleges that WPIC's denial of coverage breached WPIC's obligation to indemnify QYZ for Plaintiff's damages in the Underlying Lawsuit, and as result, Plaintiff was damaged. *Id.* at ¶41-49.

In Counts 1 and 2, Plaintiff, as QYZ's assignee, seeks to recover "compensatory damages" from WPIC, including defense costs incurred by QYZ to defend the Underlying Lawsuit (Count 1), indemnity for the judgment under the Policy (Count 2), plus costs, interest, and attorney's fees pursuant to Fla. Stat. §627.428 (Counts 1 and 2). *Id.* at p. 9, 11.

In Count 3 "Bad Faith (abated pending determination of coverage)", Plaintiff alleges that WPIC's denial of coverage breached a fiduciary duty to defend, indemnify, and settle the wrongful death claim, and as a result, both QYZ and Plaintiff suffered, and continue to suffer damages, in the form of the judgment in excess of the Policy's liability limits. *Id.* at ¶50-58.

### III. <u>REMOVAL OF THE CASE TO FEDERAL COURT IS PROPER</u>

Under 28 U.S.C. § 1441(a), any civil case filed in state court may be removed to federal court pursuant to diversity jurisdiction if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a) ("Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing

4

the place where such action is pending."). WPIC has satisfied all requirements under Sections 1332, 1441, and 1446 establishing that the instant action could have originally been filed in Federal Court. Therefore, WPIC properly removed the action to Federal Court pursuant to diversity jurisdiction.

**A.    Removal is timely.**

28 U.S.C. § 1446(b)(1) governs the timeliness of removal in civil cases:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

The "time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). Even if a defendant has actual notice of a lawsuit, service of process must comply with the rules of service to be effective. *Hunt v. Nationstar Mortg., LLC,* 782 F. App'x 762, 764 (11th Cir. 2019) (per curiam). To be effective under Florida law, formal service of process on an insurer occurs when the plaintiff serves process on Florida's Chief Financial Officer. Fla. Stat. § 48.151(3). However, the thirty-day period for

5

removal "does not begin to run until after receipt by the [insurer] through service and that would be when the summons and complaint was mailed by the Insurance Commissioner and Treasurer to the person being served." *Masters v. Nationwide Mutual Fire Ins. Co.,* 858 F.Supp. 1184, 1186 (M.D. Fla. 1994); *Morse, LLC v. United Wisconsin Life Ins. Co.,* 356 F. Supp. 2d 1296, 1298 (S.D. Fla. 2005) (Thirty-day period for filing notice of removal did not begin to run until defendant received copy of complaint served by substituted service on insurance commissioner, and thus removal was timely when filed within 30 days of receipt of complaint.).

WPIC timely removed this action from State Court. The thirty-day period for WPIC to file a notice of removal began on April 6, 2023. On that date, WPIC's registered agent received the Amended Complaint by electronic delivery from Florida's Chief Financial Officer ("CFO"). *Ex. 3, Notice of Service of Process.* Plaintiff filed the original Complaint in state court on March 21, 2023, but never served the Complaint on the CFO, and WPIC never received a copy of the Complaint from the CFO. *Ex. 2, State Court Docket.*[3] Plaintiff first served the Amended Complaint by substituted service on the CFO on April 5, 2023. *Id.* WPIC received a copy of the Amended Complaint from the CFO on

---

[3] The only difference between the Complaint and Amended Complaint is that Plaintiff did not attach Exhibit I, a copy of the final judgment in the Underlying Lawsuit, to the Amended Complaint.

6

April 6, 2023. *Ex. 3.* WPIC filed the Notice of Removal 21 days later on April 26, 2023. WPIC removed the case within 30 days after WPIC's actual receipt of a copy of the Amended Complaint from the CFO. Accordingly, removal is timely under 28 U.S.C. § 1446(b)(1).

**B.     The jurisdictional amount in controversy is satisfied.**

Courts measure the amount in controversy at the time of removal. *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 751 (11th Cir. 2010). Under 28 U.S.C. § 1446(c)(2), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" for purposes of removal.

The Court first examines "whether it is facially apparent from the complaint" that the amount in controversy exceeds the jurisdictional requirement. *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001). "In order to satisfy its burden, a defendant seeking removal ... may point to allegations in the plaintiff's complaint and associated exhibits, the defendant's notice of removal and exhibits, or affidavits and other evidence attached to the response to a motion to remand." *Schriner v. State Life Ins. Co.,* No. 11-80615-CIV, 2011 WL 13228577, at *2 (S.D. Fla. Aug. 11, 2011).

"Where damages are unspecified" in the state court pleadings, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy more likely than not exceeds the $75,000 threshold. *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1208 (11th Cir. 2007). While the

7

Court may not speculate or guess as to the amount in controversy, "when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations," such "reasoning is not akin to conjecture, speculation, or star gazing." *Pretka*, 608 F.3d at 752-54.  A removing defendant is not required to prove the amount in controversy "beyond all doubt or to banish all uncertainty about it." *Id.* at 754.  Instead, a defendant may submit a wide range of evidence to satisfy the requirements for removal, including declarations and other documentation. *Id.* at 755.  The Court may also rely on its judicial experience and make reasonable inferences to determine that the amount in controversy is satisfied. *Roe v. Michelin N. Am., Inc.* 613 F.3d 1058, 1061 (11th Cir. 2010).

Although Counts 1 and 2 of the Amended Complaint seek an unstated amount of "compensatory damages", it is still facially apparent from the allegations and associated exhibits that the amount in controversy exceeds the jurisdictional requirement. The allegations and exhibits attached to the Amended Complaint, including the Policy, the settlement and assignment agreements, and the amount of the final judgment in the Underlying Lawsuit, clearly establish that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs. *Sinni v. Cullen,* No. 608-CV-1787-

8

ORL31KRS, 2008 WL 4927009, at *1 (M.D. Fla. Nov. 14, 2008) ("As evidenced by the settlement and assignment agreement, the amount in controversy in this case clearly exceeds $75,000.00."). The Amended Complaint alleges that QYZ assigned to the Plaintiff the right to collect the alleged damages for WPIC's alleged breach of contractual duties to defend and indemnify QYZ for damages awarded to Plaintiff in the Underlying Lawsuit. *Ex. 1* at ¶18-20 & Ex. F-G. The terms of the settlement and assignment resulted in an arbitration that generated a final judgment for damages awarded to Plaintiff totalling approximately $12.5 million, which clearly exceeds $75,000. *Id.* at ¶21-24 & Ex. F-I. The amount in controversy is facially apparent because the Amended Complaint and exhibits together show that in Count 2, Plaintiff seeks a finding that WPIC must indemnify Plaintiff for damages in an amount equalling the fullest potential extent of coverage under the Policy for Plaintiff's judgment against QYZ, or the Policy limit of $1,000,000. *Ex. 1* at ¶41-49 & Ex. A, CGL Declarations (p. 111 of 253 of the Policy).

This Court routinely finds that the amount in controversy requirement is satisfied where the plaintiff claims the fullest extent of coverage under an insurance policy with policy limits exceeding $75,000. *N.H. Indem. Co. v. Scott*, No. 8:11-cv-943-T-23MAP, 2012 WL 6537098, at *2 (M.D. Fla. Dec. 14, 2012) ("The amount of damages sought in the underlying action is relevant only up to the amount for which the insurer must indemnify the insured. Thus, if the

9

value of the underlying claim exceeds the insurer's potential liability under the policy, the amount in controversy in the declaratory judgment action is the insurer's potential liability under the policy — the policy limit."); *Baltazar v. Balboa Ins. Co.*, No. 8:10-cv-2932-T-33MAP, 2011 WL 2020218, at *2 (M.D. Fla. May 24, 2011) ("Where the insured seeks to recover to the fullest extent of coverage, the court can determine the amount in controversy by reference to the face of the policy."); *see also First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.,* 648 F. App'x 861, 865 (11th Cir. 2016) (unpub.) ("The amount in controversy here exceeds $75,000. In the underlying state court action, Excellent Computing seeks to recover from Crime Stoppers for the loss of more than $2,000,000 worth of computer equipment. First Mercury's policy covering Crime Stoppers during the relevant time contained a $2,000,000 aggregate limit and a $1,000,000 per-occurrence limit. Thus, if First Mercury loses its declaratory judgment action, it may face $1,000,000 or more in coverage liability. Put differently, the "value of the object of this litigation"—a judgment declaring First Mercury free from any indemnification obligation under its policy—far exceeds $75,000. First Mercury therefore satisfied § 1332(a)'s amount-in-controversy requirement, and the district court had subject-matter jurisdiction over the action.")

Here, Count 2 of the Amended Complaint alleges that Plaintiff is entitled to recover the fullest extent of coverage under the Policy ($1 million) as

indemnity for the judgment in the Underlying Lawsuit (over $1 million).  *Ex. 1* at ¶41-49 & Ex. A, F-I.  Thus, WPIC's potential coverage liability up to the $1,000,000 limits of the Policy exceeds $75,000.

In addition, Plaintiff's civil cover sheet filed with the original Complaint in the Underlying Lawsuit indicates that the amount of his claim exceeds $100,000.  *Ex. 4, Civil Cover Sheet* at p.1.  The Court may consider the amount of claim asserted in Plaintiff's Civil Cover Sheet in determining the amount in controversy.  *Martinez v. Liberty Mut. Ins. Co.,* No. 6:21-CV-516-JA-LRH, 2021 WL 1588817, at *1 (M.D. Fla. Apr. 23, 2021) ("And although not mentioned by either party, on the Civil Cover Sheet that Martinez filed in state court along with her Complaint, Martinez checked the box for an "amount of claim" in the range of $75,001-$100,000 – not one of the four lower ranges on that form.").  Consequently, it is facially apparent from the pleadings that the amount in controversy meets the jurisdictional requirement for removal.

Aside from the clear indications on the face of the Amended Complaint and other evidence presented by WPIC showing that the amount in controversy is satisfied, the Court can use its judicial experience and common sense to reasonably infer, without speculation, that the amount in controversy is satisfied.  Plaintiff, as QYZ's assignee, seeks damages from WPIC that include recovery of QYZ's defense costs incurred in the Underlying Action, plus indemnity under the Policy with limits of $1,000,000 for the underlying

11

judgment of approximately $12.5 million, plus interest and attorney's fees. *Ex. 1* at ¶25, 39, 40, 48, 49 & Ex. A - CGL Declarations (p. 111 of 253 of the Policy), Ex. F - Settlement Agreement at p.2. Based on these allegations, exhibits, and declaration proffered by WPIC, the Court can reasonably deduce that WPIC's potential liability in this action exceeds $75,000. Regardless, WPIC need not prove beyond all doubt that the amount in controversy exceeds the requirement. *Pretka,* 608 F.3d at 754. All that WPIC must show is that amount in controversy exceeds the jurisdictional minimum by a preponderance of the evidence. WPIC has met the standard with the evidence presented at the time of removal.

For purposes of computing the amount in controversy, the value of Count 3 "Bad faith" is zero dollars because that claim is not ripe. *Ex. 1* at ¶51. *Sullivan v. Everett Cash Mut. Ins. Co.,* No. 19-11943, 2023 WL 1521579, at *4 (11th Cir. Feb. 3, 2023) ("If a claim is not ripe, and cannot be heard by a federal court, its value means nothing insofar as the amount-in-controversy requirement is concerned."). As such, the Court need not consider the value of Count 3 to determine that the amount in controversy is satisfied.[4]

---

[4] Indeed, the Court lacks subject matter jurisdiction to decide an unripe claim. *D'Agostino v. Safeco Ins. Co. of Illinois*, No. 3:22CV23640/MCR/HTC, 2023 WL 2905567, at *2 (N.D. Fla. Apr. 11, 2023) ("Dismissal of the premature bad faith claim comports with the constitutional limitation on the Court's jurisdiction because an unripe claim does not present a 'case or controversy.'"); *Babilla v. Allstate Ins. Co.*, No. 620cv1434ORL37LRH, 2020 WL 6870610, at *1 (M.D. Fla.

12

**C.     There is diversity of citizenship between the parties.**

28 U.S.C. § 1332(a)(1) provides that federal district courts "shall have original jurisdiction of all civil actions where the matter … is between [ ] citizens of different States." To establish diversity jurisdiction, each defendant must be diverse from each plaintiff. *Univ. of S. Alabama v. Am. Tobacco Co.,* 168 F.3d 405, 412 (11th Cir. 1999). The court determines citizenship at the time the lawsuit is filed. *MacGinnitie v. Hobbs Grp., LLC,* 420 F.3d 1234, 1239 (11th Cir. 2005).

    **1.     Plaintiff is a citizen of Florida.**

Plaintiff is the Decedent's estate. "Where an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and she is deemed to be a citizen of the state in which she was domiciled at the time of her death." *King v. Cessna Aircraft Co.,* 505 F.3d 1160, 1170 (11th Cir. 2007). Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person. *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994). Citizenship is equivalent to domicile for purposes of diversity jurisdiction, which is the place of a person's "true, fixed, and

---

Aug. 27, 2020) (dismissing bad faith claim without prejudice as "unripe"); *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 95 F. Supp. 3d 1358, 1364 (M.D. Fla. 2015) (finding "no current and definite controversy in Count III before the court because Plaintiff's bad faith claim may never accrue"). Therefore, the Court must dismiss Count 3 for bad faith from the case.

13

permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt,* 293 F.3d 1254, 1257-58 (11th Cir. 2002). "In determining domicile, a court should consider both positive evidence and presumptions." *Jones v. L. Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001). The Court makes its determination as to a party's domicile by reviewing several types of evidence, such as *inter alia,* the party's declaration, driver's license, and motor vehicle registration. *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003).

The Amended Complaint does not allege the Decedent's domicile at the time of his death. The Amended Complaint only alleges that the Personal Representative is a resident of Duval County, Florida. *Ex. 1* at ¶3.

The evidence proffered by WPIC establishes unequivocally that Decedent's domicile at the time of his death was Duval County, Florida. According to the Petition for Administration filed by Eric Contessa to open the Decedent's Estate, Decedent's "last known address was 3428 Docksider Drive South, Jacksonville, Florida 32257" and "*on the date of death decedent was domiciled in Duval County, Florida.*" Composite Ex. 5, Declaration of Josh Levy at ¶3 & Petition for Administration at p.1. Decedent possessed a Florida driver's license issued in 2010 indicating his address was 3428 Docksider Drive South Jacksonville, Florida 32257. *Id.* at ¶4 & Driver's License Record.

14

Decedent's motor vehicle records indicate ownership of a motorcycle registered in Florida with a Jacksonville, Florida mailing address. *Id.* & Motor Vehicle Registration. Decedent's domicile at the time of his death clearly was Florida. Therefore, Plaintiff is a citizen of Florida for diversity purposes.

### 2. WPIC is a citizen of Michigan.

WPIC is a corporation. For a corporate defendant, the complaint must allege either the corporation's state of incorporation or principal place of business. 28 U.S.C. § 1332; *Holston Investments, Inc. B.V.I. v. LanLogistics Corp.,* 677 F.3d 1068, 1070 (11th Cir. 2012). The Amended Complaint does not allege WPIC's state of incorporation or principal place of business, only that WPIC is an insurer authorized to do business in Florida. *Ex. 1* at ¶4. WPIC's state of incorporation is Michigan and its principal place of business is in Michigan. *Ex. 6, Declaration of Richard Joseph Fiato* at ¶3. WPIC is a citizen of Michigan for diversity purposes. Accordingly, WPIC has established diversity jurisdiction because all parties are citizens of different states.

### D. All other conditions for removal are satisfied.

#### 1. Venue

Venue is proper in the Middle District of Florida because it is "the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a).

#### 2. Copy of Notice of Removal Filed in State Court

Concurrent with the filing and serving of this Notice of Removal, WPIC shall file a copy of this Notice of Removal in the State Court in compliance with 28 U.S.C. § 1446(d).

### 3. No Previous Applications

WPIC has not made previous applications for the relief requested herein.

### 4. Reservation of Rights

Notwithstanding this removal, WPIC does not waive and specifically reserves all objections, exceptions, or defenses to this action, including but not limited to moving to have this matter dismissed, stayed and/or transferred to another court. WPIC reserves the right to amend or supplement this Notice of Removal.

## IV. CONCLUSION

Based on WPIC's Notice of Removal and evidence filed therewith at the time of removal, the Court has diversity subject matter jurisdiction over this action. Accordingly, WPIC's removal of this action from State Court is proper.

Respectfully submitted,

*/s/ Josh Levy*
Josh Levy
Fla. Bar No. 668311
Jedidiah Vander Klok
Fla. Bar. No. 84766
Kennedys CMK LLP
1395 Brickell Avenue, Suite 640
Miami, FL 33131
Tel: (305) 371-1111
Fax: (305) 374-8066
Email: josh.levy@kennedyslaw.com
Email: jedidiah.vanderklok@kennedyslaw.com
laura.melendez@kennedyslaw.com
*Counsel for Defendant*
*White Pine Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on **April 26, 2023** a true copy of the foregoing has been filed via the CM/ECF system and served via E-Mail on all Counsel or parties of record on the Service List below.

**SERVICE LIST:**
Fred A. Cunningham, Esq.
*Counsel for Plaintiff*
DOMNICK, CUNNINGHAM & YAFFA, P.A.
2401 PGA Blvd., Suite 140
Palm Beach Gardens, FL 33410
fred@pbglaw.com
tracy@pbglaw.com
eservice@pbglaw.com

Robert P. Major, Esq.
Michael W. Hoffman, Esq.
*Counsel for Plaintiff*
VER PLOEG & MARINO, P.A.
301 East Pine Street Suite 790
Orlando, FL 32801
rmajor@vpm-legal.com
mhoffman@vpm-legal.com
bvillamor@vpm-legal.com
memanuel@vpm-legal.com

                                        */s/ Josh Levy*
                                        JOSH LEVY